## DRUCKLIEB et al. v. UNIVERSAL TOBACCO CO.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

**1. SALES—EXECUTORY CONTRACT—ACCEPTANCE.**

Where defendant wrote plaintiffs, requesting them to enter an order for Turkish tobacco to be imported, specifying amounts, kinds, and average prices, the actual price not being then ascertainable, such written order constituted an executory contract of purchase and sale, the quality and price to be determined on arrival within the reasonable range of terms fixed by the order.

**2. SAME—ACCEPTANCE.**

On arrival of the tobacco defendant became bound to accept and pay therefor, if it was in substantial compliance with the terms of the order and the prices placed thereon were the reasonable values within such terms.

**3. SAME—INSPECTION.**

Where defendant ordered certain Turkish tobaccos to be imported, quality and price, within certain range, to be fixed on arrival, defendant was bound, on a tender of the tobaccos being made, to determine as to the quality and price within a reasonable time after an opportunity for inspection.

**4. SAME—ACCEPTANCE.**

Where defendant ordered certain Turkish tobaccos to be imported, quality and price, within certain limits, to be determined on arrival, and when the tobacco arrived it was placed in a bonded warehouse, and at defendant's direction samples were withdrawn and delivered, and thereafter defendant received and retained a part without objection, together with the warehouse delivery order for the balance and the withdrawal entries, which were retained for more than two months, such facts justified a finding that defendant had accepted the tobacco and was bound to pay therefor.

**5. SAME—REDUCTION OF PRICE—COMPROMISE.**

Where defendant was bound to accept and pay for tobacco sold at prices fixed, the fact that plaintiffs thereafter offered to reduce the price in order to induce defendant to accept and pay for the tobacco did not create a new contract, or defeat defendant's liability for the price fixed.

**6. SAME—OBJECTIONS.**

Where defendant at no time during the negotiations with reference to a sale of tobacco assumed to reject the same absolutely, or made any suggestion that more tobacco had been tendered than complied with the terms of the contract, or than defendant was required to take, it was estopped to defend an action for the price on the ground that the tender was excessive.

**7. SAME—INSTRUCTIONS—EXCEPTIONS.**

Where, after the jury retired, and defendant had taken certain exceptions to the refusal of the court to charge certain requests, the court offered to call the jury back and charge such requests, to which counsel made no reply, he thereby waived his right to have such requests given.

Appeal from Trial Term, New York County.

Action by Julius C. Drucklieb and others against the Universal Tobacco Company. From a judgment in favor of plaintiffs and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Otto T. Hess, for appellant.

Louis O. Van Doren, for respondents.

HATCH, J. This action was brought to recover the sum of $28,-732.41, the purchase price of 754 bales of Turkish tobacco imported by the plaintiffs from Turkey, and claimed to have been sold by them to the defendant, and also to recover the further sum of $104.50, being premiums upon fire insurance paid by the plaintiffs for the defendant. The defendant contends that there was no contract of sale of the tobacco, and that it never accepted the same when tendered by the plaintiffs. The order for the tobacco was contained in a written memorandum delivered by the defendant to the plaintiffs, reading as follows:

"New York, June 4th, 1901.

"J. C. Drucklieb & Co., 309 Broadway, Manhattan. Dear Sirs:—Please enter our order for the following tobaccos:

"50,000 lbs. Cavalla at not over 22c. per lb.

"25,000 lbs. Ayasouluk at an average price of about 70c. per lb.

"5,000 lbs. Basma at from 25 to 60c. per lb., according to quality.

"Also, for immediate delivery,

"2,500 lbs. Ayasouluk at about 75c per lb.

"This latter being the lot which you stated to the writer was immediately available.        Yours very truly,

"Universal Tobacco Company,
"B. M. Cole,
"Asst. Secy."

The controversy between these parties arises out of the first two items in the above order. Fulfillment of the same as to the Basma tobacco was not insisted upon, and the 2,500 pounds of Ayasouluk for immediate delivery were delivered and paid for by the defendant. The plaintiffs, in execution of this order, purchased and imported from Turkey 500 bales, containing 59,101 pounds, of Cavalla tobacco, and 254 bales, containing 28,129½ pounds Ayasouluk. The Cavalla tobacco arrived at the port of New York on October 6, 1901, and the Ayasouluk tobacco on the next day. The duty imposed by the United States government upon these goods was 35 cents per pound. On arrival the tobacco was put into the bonded warehouse of William H. Dumont & Co., by agreement between the parties, the warehouse entries being made by the plaintiffs through their brokers. On the 15th of October the defendant was informed that all of the tobacco was in the bonded warehouse. Mr. Judkins, manager of the leaf tobacco branch of the defendant's business, directed the plaintiffs to send ten bales of the Cavalla and five bales of the Ayasouluk tobacco to the defendant's factory.

The plaintiffs complied with the order, and sent the fifteen bales as requested, selecting a sample of the different-sized leaf in the five-bale lot, which represented the different grades of Ayasouluk tobacco. The Cavalla was of a single grade, and the ten bales from it were taken at random. Withdrawal entries were executed for these fifteen bales of tobacco, and the defendant received the same, and paid the customs duties, which amounted to $611.25. On October 29th the plaintiffs sent the defendant a bill of the Cavalla, 59,101 pounds, at 22 cents per pound net, and at the same time sent the defendant an order for the tobacco remaining in the warehouse, so that the defendant could withdraw it therefrom. On the 6th of November the defendant's president met Mr. Drucklieb, and told him that he had not expected to be charged top price for the tobacco, and after some talk Drucklieb agreed to reduce the price, and the next day sent a second bill to the defendant, charging 21 cents per pound net for the Cavalla, and offering to go with Mr. Judkins to the warehouse and take samples of all the tobacco there. On the 7th of November, 1901, the plaintiffs saw Mr. Judkins, and had a conversation with him concerning seventeen bales of the Ayasouluk protomana, or large leaf tobacco, which was the lowest grade of that class. The defendant did not want to take that, and thereupon the plaintiffs stated that the defendant could have it at 30 cents per pound, or that the plaintiffs would keep it at that price. Judkins thereupon said he would keep it himself at that price; "Make separate bill out, and I will keep those myself." Drucklieb then said the other Ayasouluk would be 60 cents per pound. Two days after this conversation, the plaintiffs obtained the official weight of the Ayasouluk tobacco, showing 28,129½ pounds net. Two separate bills were made out therefor, one for 17 bales and the other for the remaining 232 bales, pursuant to the conversation with Judkins. On the 11th of November, the plaintiffs testified, Mr. Cole called them up by telephone, and said: "I want you to send us, as quick as possible, about a dozen withdrawal blanks for the withdrawal of our tobacco from the warehouse." The plaintiffs immediately procured the sheets and sent them to the defendant, and it retained the same. After the order and withdrawal receipts for all the tobacco had been delivered by the plaintiffs to the defendant, and, although the prices of the tobacco had been before that time apparently arranged, after considerable negotiation and discussion, the defendant again raised the question as to price; and the plaintiffs, as they claim, for the purpose of avoiding controversy and a lawsuit over the tobacco, wrote under date of December 5, 1901:

"Complying with your request for a written proposal from us in regard to the 754 bales of tobacco we submit that we are willing to accept the following prices:

254 bales Ayasouluk at .45 per lb.
and 500    "    Cavalla    at .20    "    "

"We also enclose our statement covering sales outside of the above 754 bales and should be glad to receive your check. All of the items appearing on this statement represent goods sold on cash terms and should have been paid before this."

To this letter the defendant replied:

"Answering your letter of the 6th inst., we are unwilling to purchase the 754 bales of tobacco at the prices indicated. .

"The tobacco in question is not of the character covered by our orders, and furthermore, you first billed to us at 60c. and 22c. stock which you now offer at 45c. and 20c. and even the latter figures are above the market value for such grades.

"The sample bales of this lot which you sent to our factory are held subject to your order. Kindly send for them as promptly as practicable.

"Respecting the other items to which you refer, we enclose check as per statement."

The defendant did not return with this letter the weight lists, the bills, the orders on the warehousemen, and the signed withdrawal entries for consumption.

The facts, as above stated, are fairly to be derived from the testimony offered on the part of the plaintiffs, and the finding of the jury in their favor must be deemed to have established that such was the relation between the parties and their status at the time of the commencement of this action. The testimony upon the part of the defendant put in issue every substantial element made by the case of the plaintiffs. A question of fact was thus presented for determination by the jury, and the verdict in favor of the plaintiffs. is abundantly established by the evidence. The written order for the tobacco was in every substantive respect an executory contract of purchase and sale. Anderson v. Read, 106 N. Y. 333, 13 N. E. 292. The contract contemplated the purchase of the tobacco in Turkey, and the conditions which were shown to exist surrounding the execution of the contract clearly indicate that accuracy as to quality and price could not be definitely known until the tobacco was obtained, and for this reason the contract as to price was left somewhat indefinite, and was evidently to be determined by the parties upon the arrival of the tobacco, when, within the reasonable range of the terms fixed by the order, the prices would be agreed upon. The order bound the plaintiffs to furnish tobacco of the kind and quality which would, at a reasonable price, approximately be worth in the city of New York the prices specified in the order. The defendant, upon the arrival of the tobacco at the port of New York, became bound to accept and pay for the tobacco tendered if it was in substantial compliance with the terms of the order. It had a right to an opportunity to inspect the same in order to determine that it was of the quality ordered, and that the prices placed thereon were the reasonable value of the tobacco, having regard to the terms of the order. The plaintiffs could not compel an acceptance of tobacco which did not in quality and in price approximate to the description of the same as contained in the order; neither could the defendant refuse to accept and pay a reasonable price if the tobacco as tendered as to quality and price answered the terms of the order. The defendant was bound to determine as to quality and price within a reasonable time after its arrival and opportunity for inspection. When the plaintiffs tendered the tobacco and fixed the price, the conditions being complied with, the defendant became

bound to accept the same and pay the reasonable price therefor. The evidence justified the conclusion that such reasonable opportunity for inspection was given; that the quality of the tobacco fairly complied with the terms of the order, and that the prices placed thereon were its reasonable value in the city of New York. These facts existing, and the plaintiffs having tendered delivery of the tobacco, and the defendant having received and retained a part without objection, and having the muniments of title in its possession, sufficient appeared from which the jury were authorized to find that the tobacco had been accepted by the defendant, and that it became obligated to pay therefor (Rohde v. Thwaites, 6 Barn & Cres. 181; Hankins v. Baker, 46 N. Y. 666); and the defendant cannot be heard thereafter to object either to the quality of the commodity or its price (McCormick v. Sarson, 45 N. Y. 266, 6 Am. Rep. 80; Carr v. Sullivan, 68 Hun, 246, 22 N. Y. Supp. 972).

The jury were authorized to find upon the evidence that at the time when the question was raised by the defendant as to the price of the tobacco, after there had been delivery of the 15 bales, which had been retained for nearly two months, and after the defendant had asked for and received the withdrawal orders under the claim that it was their tobacco, that it had accepted the same, it could not then repudiate the sale, and, under pretense of negotiating as to price, create a new contract, which ignored and disavowed the fulfillment of the old one. The offer by the plaintiffs of a reduced price for the tobacco, under these circumstances, amounted to nothing more than an offer of settlement of the claim and liability which had already become fixed. It did not create a new contract, nor could the defendant by rejection of the offer defeat its liability to pay for the tobacco a reasonable price. This question, at least, under the evidence, became one of fact for the jury, and their determination in favor of the plaintiffs settles the question of the defendant's liability.

The court submitted the case to the jury under a very stringent rule, more favorable to the defendant than to which it was entitled. It charged that, before a recovery could be had, the defendant must have accepted a delivery of the tobacco; that such acceptance was not to be derived from a consideration of the delivery of the orders of withdrawal and muniments of title solely as being sufficient, but that they must find from all the circumstances of the case that in fact the defendant had accepted a delivery of the tobacco. Certainly the defendant could not ask for a more favorable charge upon the question at issue. The defendant contends, however, that error was committed in the refusal of the court to charge "that, if the tobacco tendered was a larger amount than the defendant ordered, the defendant was entitled to reject the entire amount tendered." This rule might have been invoked had the defendant at any time planted itself upon such ground. But nowhere in the case, either during the course of the negotiations or in the letter by which they finally assumed to reject the tobacco absolutely, was there any suggestion that more had been tendered than complied with the terms of the contract, or more than they were required to take. Under

such circumstances the point is not available. Hayden v. Demets, 53 N. Y. 426.

It is further objected by the defendant that error was committed in refusing to charge various requests, to the number of 20, to which it is claimed an exception was taken. The court charged eight specific requests presented by the defendant. Counsel then said: "I will take an exception to the others. I understand your honor declined to charge the others. The Court: I decline to charge those except as severally charged." The jury then retired, when counsel for the defendant took some exceptions to the charge, and then stated that he excepted to the refusal to charge 11 other requests, which apparently were not read. Counsel for the plaintiffs thereupon stated: "I understood that those you did not ask the court to charge you withdrew." To which the counsel for the defendant replied: "No; the court said he refused to charge those except as specifically charged. The Court: If you want me to charge any of those, I will send for the jury and charge them." To this offer the defendant made no response, and did not request that the jury be brought back. No question was raised by this proceeding, and the exception is not available. Huerzeler v. C. C. T. R. R. Co., 139 N. Y. 490, 34 N. E. 1101. The counsel, as he had an opportunity to have the jury recalled and the requests charged, and did not avail himself of such offer, must be deemed to have waived whatever right he had with respect thereto. In addition, the charge as made covered the issues and presented all the questions to which the defendant was entitled.

It follows that the judgment and order should be affirmed, with costs. All concur; INGRAHAM, J., in result.